Rita M. RAGAN, Plaintiff,

v.

Robert FINCH, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 2217.

United States District Court,
E. D. Tennessee,
Northeastern Division.

March 27, 1969.

Dec. 22, 1969.

D. H. Frackelton, Widener, Widener & Frackelton, Bristol, Va., James P. Grayson, Curtin, Haynes & Winston, Bristol, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

### C. G. NEESE, District Judge.

This is an action for the judicial review of the final decision of the defendant-administrator, 42 U.S.C. § 405(g), denying the plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423. The defendant seeks a summary judgment on the record, Rule 56(b), Federal Rules of Civil Procedure. The plaintiff seeks a remand for further administrative consideration when counsel can present further the plaintiff's claim. 42 U.S.C. § 405(g).

The plaintiff Miss Ragan filed a claim for disability benefits and applied for the establishment of a period of disability on February 26, 1966, asserting that such disability commenced in December, 1960. She last met the special earnings of the Social Security Act for the establishment of a period of disability and entitlement to benefits on September 30, 1961. Her claim was denied at successive administrative stages. The denial ultimately by the defendant's appeals counsel of the plaintiff's request for a review of the decision of a hearing examiner of November 20, 1967 constituted the final decision of the administrator.

The hearing examiner found that, as of September 30, 1961, Miss Ragan had impairments from mild scoliosis[1] and " * * * a nervous temperament with episodes of hyperventilation and tachycardia." He found these impairments, singly and in combination, were not severe enough to prevent Miss Ragan's engaging in substantial gainful activity or likely to result in death, and had not lasted, or could not be expected to last, continuously for a year or more. Thus, the sole issue is whether these and related findings are supported by substantial evidence. 42 U.S.C. § 405(g).

The finding that the plaintiff developed impairments in 1961 is supported by substantial evidence. Dr. John O. Marcy, a general practitioner, reported that in the preceding January, 1959, while Miss Ragan was then under treatment for pain in her low back, she had at that time no limitation of motion and no interference with her reflexes or mental reactions.

The plaintiff was examined by both an internist and an orthopedist on the same day, January 25, 1961. The former, Dr. James B. Magee, discovered the mild scoliosis as well as the hyperventilation syndrome, manifested by spells of the plaintiff's legs' and arms' jerking, associated with a numbness around her mouth. He suspected, but eliminated, andometriosis, duodenal ulcer, and osteocarthritis of her lumbar spine. Several months afterward in that same year, Dr. Marcy re-examined the plaintiff and expressed his opinion that she could then do no heavy work requiring lifting because of the curvature of her spine and her nervousness.

Miss Ragan testified that she started working for a thread producer when she was 16 years of age, (which would have been about 1945); that she stood while operating both quilling and reeling machines; that her employment was continuous for about ten years (or until about 1955); that she was unemployed for an interval of four or five years (1955–1959, perhaps), and returned to her former employer where she served as a packer for approximately two additional years (1960–1961); that she lost time from her employment because of her back and nervousness; that while on the job she would " * * * just start

---

[1]. This is an abnormal curvature of the vertebral column. Dorland's Illustrated Medical Dictionary, 23rd ed., (Saunders, 1957), pp. 1220–1221.

jerking all over and get weak and pass out, and they would have to come get me and take me home. And that's when the doctor wouldn't let me go back to work. * * * I've been extremely nervous all my life. * * * "

Miss Ragan testified that since leaving the labor market she is awakened by her heart beating fast and hard (tachycardia) and is weak even when she awakens normally in the mornings. She said that she does not visit physicians for economic reasons, although she does obtain prescriptions telephonically for tranquilizers, with a dosage of four daily. She resides with her aged father and, when she feels able, makes beds, washes dishes, and shares the cooking duties with her sister.

This seems to have given rise to the conclusion in some quarters that the plaintiff lacks proper motivation as regards employment and rehabilitation. However, she was examined on August 30, 1965 by Dr. Marshal D. Hogan, a psychiatrist, who, in his opinion, found this to be untrue although she was suffering at that time from a chronic, moderate anxiety reaction, manifested by episodes of anxiety with tachycardia. About six months afterward, Dr. K. A. Jamison re-examined Miss Ragan and found the same condition as in his earlier examination of January 25, 1961, except for increased tenderness in the vicinity of her right sacroiliac. Dr. Jamison expanded on his findings, to cover the period February, 1962 until January 26, 1966, stating his findings as: progressive scoliosis of the back of congenital origin which had increased in intensity over the past five years to the point that the plaintiff had marked pain with inability to sit erect or stand for any appreciable period of time.

Another orthopedist, Dr. Sam Huddleston, noticed the moderate thoracolumbar [2] scoliosis due to the congenital deformity of Miss Ragan's spine on examination on April 1, 1966. Al-

though his primary interest is skeletology, he thought her most disabling factor at that time was her emotional response. Some 16 months afterward, the plaintiff was examined by another internist, Dr. F. F. Nicely, whose diagnosis noted the scoliosis of the spine and a marked, chronic anxiety reaction, disabling to the extent that she was unable to work, although this physician thought she might become stable enough to be employable with proper treatment.

 The Court finds no substantial evidence to support the examiner's finding that Miss Ragan was suffering from a nervous temperament on September 30, 1961. Substantial evidence denotes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. National Labor Relations Bd. v. Columbian E. & S. Co. (1939) 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed. 660, 665 (headnote 3). The reasonable inferences and conclusions the defendant may draw from the evidence are binding on the Court. May v. Gardner, C.A. 6th (1966), 362 F.2d 616, 618[2]. The possibility that two inconsistent conclusions may be drawn from the evidence does not prevent findings of an administrative agency from being supported by substantial evidence. Consolo v. Federal Maritime Com. (1966), 338 U.S. 607, 620, 86 S.Ct. 1018, 16 L. Ed.2d 131, 141 [10]. Even so, this Court must be influenced by a feeling that it is not to abdicate the conventional judicial function. Congress has imposed on it the responsibility of assuring that administrative agencies remain within due bounds. Universal Camera Co. v. National Labor Relations Bd. (1951), 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456, 468[4].

There is corroboration in the record of the plaintiff's claim that she became disabled in December, 1960. There is evidence that she had developed by the following month scoliosis and hyperventilation.[3] Dr. Marcy expressed

---

2. From her chest down to her loins.

3. Abnormally prolonged, rapid, and deep breathing. It is marked by confusion,

his opinion that year that Miss Ragan could do no heavy work requiring lifting. Dr. Jamison examined this patient in January, 1961 and watched the scoliosis progress to the point that the plaintiff had such marked pain that she was unable to sit erect or stand for long. Dr. Huddleston was of the opinion that the scoliosis had progressed (from mild) to a moderate degree when he examined the plaintiff in April, 1966, but even so, thought her emotional reaction was then a bigger health problem than the progressing scoliosis. By 1967 Dr. Nicely was of the opinion that Miss Ragan was disabled to work for some unspecified period of time, with the possibility extant that her condition might be stabilized with treatment sufficiently to enable her to resume work.

This virtually unanimous outpouring of expert medical opinion would have supported substantially a finding that Miss Ragan was possessed of a long-continued feeling of apprehension, uncertainty and fear, which had developed into a mental or emotional state, i. e., a chronic anxiety reaction. Much more severity is implied in the evidence than that the plaintiff was of a nervous temperament; i. e., possessed of a mental cast of undue excitability.

■ This Court cannot allow the hearing examiner's finding of a lower grade or degree of mental or emotional impairment to supplant the definite findings of the medical experts who gave evidence, cf. Hall v. Celebrezze, C. A. 6th (1963), 314 F.2d 686, 690, especially where his conclusion that the combination of the plaintiff's impairments was not severe enough to warrant granting her relief under remedial legislation is based in some part on such finding.

■ As the matter will be considered again by the defendant, it is well to observe that there is question as to whether Miss Ragan could perform substantial gainful duties in the national economy as a waitress, maid, bottle inspector or pill counter. Her ability to perform the first two vocations appears to be refuted by the apparently undisputed opinion of Dr. Jamison that the plaintiff is unable to stand for any appreciable period of time. The personnel manager of a drug firm stated that he knew of no business or industry which would employ Miss Ragan. The president of a bottling plant stated that any ill person who was uncomfortable in any way could not inspect bottles or work on a production line. The most recent medical opinion concerning Miss Ragan is to the effect that the combination of her impairments have disabled her to the extent that she is presently unable to work. She is 40 years of age, 5' 5" in height, weighs 126 pounds and has only an eighth grade education. Her ability to engage in any substantial gainful activity must be measured on the bases of her particular capabilities and what is reasonably possible, not on what is conceivable. Brasher v. Celebrezze, C.A. 6th (1965), 340 F.2d 413, 415.

The Court believes that, under all the various circumstances presented, justice requires that the plaintiff's claim be remanded to the Social Security Administration for further consideration. This matter hereby is remanded to the defendant for that purpose.

### MEMORANDUM OPINION

This action was remanded for further consideration of the Social Security Administration, 42 U.S.C. § 405(g), on the motion of the plaintiff, principally because the evidence supplied by medical experts appeared to require a factual finding of a more severe impairment of Miss Ragan than that then found by a hearing examiner. See memorandum opinion and order of March 27, 1969 herein for a detailed discussion. The examiner had found, inter alia, that the plaintiff was possessed of a mental cast of undue excitability, with episodes of hyperventilation and tachycardia.

■ On remand, the same examiner considered additional medical and other

dizziness, numbness, and muscular cramp brought on by such breathing. Dorland's

Illustrated Medical Dictionary, 23rd ed. (Saunders, 1957), p. 647.

evidence as well as the evidence previously considered and found that, in this particular, Miss Ragan was impaired, *inter alia*, by an anxiety neurosis, chronic, moderate, with episodes of hyperventilation and tachycardia. The Court is of the opinion that there is substantial evidence to support this particular finding, as well as the ultimate findings of the defendant Secretary that the combination of the plaintiff's impairments were not sufficiently severe on September 30, 1961 to prevent her engaging in substantial gainful activity, and, thus, that she was not then disabled within the contemplation of the Social Security Act while she was in insured status.

The findings of the defendant administrator, being supported by substantial evidence, are conclusive. Wright v. Celebrezze, D.C.Tenn. (1965), 246 F.Supp. 330, 332. The findings being thus substantiated, and as there are now no errors of law evident in the record, it is incumbent upon this Court to affirm the decision of the defendant Secretary. Richard v. Celebrezze, D.C.Minn. (1965), 247 F.Supp. 183, 184 [1].

The plaintiff hereby is denied all relief. A judgment will enter granting the defendant's motion of September 30, 1968 for a summary judgment, Rule 56(c), Federal Rules of Civil Procedure, affirming the decision herein of the defendant Secretary, 42 U.S.C. § 405(g), and dismissing the complaint.